IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELIAZAR CHUN SONTAY and ANIBAL MICHICOJ, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H:13-cv-3721 |
| HIN'S GARDEN, VIN HINH, and XUONG HINH., | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND OPINION GRANTING MOTION TO VACATE DEFAULT JUDGMENT

### I. Background

Eliazar Chun Sontay and Anibal Michicoj sued Hin's Garden, Vin Hinh, and Xuong Hinh, seeking unpaid overtime under the Fair Labor Standards Act (FLSA). The defendants were served with summons and the complaint in February 2014. (Docket Entry No. 18-1 at 2). They did not answer. On April 16, 2014, the plaintiffs moved for entry of default and default judgment. (Docket Entry No. 13). On May 1, 2014, the defendants failed to appear at the initial pretrial conference. (Docket Entry No. 16). The next day, the court granted the plaintiffs' motion for entry of default and default judgment. (Docket Entry No. 15).

On August 29, 2014, the defendants filed a motion to vacate the default judgment under Fed. R. Civ. P. 60. (Docket Entry No. 18). The plaintiffs responded, (Docket Entry No. 19), and the defendants replied, (Docket Entry No. 20). Based on the pleadings, the briefs, the parties'

arguments, the record, and the applicable law, the court grants the defendants' motion to vacate. The reasons are explained below.

II. Analysis

A. The Legal Standard for Vacating a Default Judgment

Rule 55(c) allows the court to "set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b), in turn, allows the trial court to "correct obvious errors or injustices." *Fackelman v. Bell*, 564 F.2d 734, 736 (5th Cir. 1977). "The extraordinary relief afforded by Rule 60(b) requires that the moving party make a showing of unusual or unique circumstances justifying such relief." *Wright v. Robinson*, 113 F. App'x 12, 16 (5th Cir. 2004) (citing *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 286 (5th Cir. 1985)). Under Rule 60(b)(1), a district court may grant relief from a judgment for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1).

In determining whether to set aside a default judgment, district courts are to consider: (1) whether the defendant willfully defaulted; (2) whether a meritorious defense is presented; and (3) whether setting aside the default judgment would prejudice the plaintiff. *Scott v. Carpanzano*, 556 F. App'z 288, 293 (5th Cir. 2014) (citing *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 119 (5th Cir. 2008)). "Of these factors, two can be determinative: a district court may refuse to set aside a default judgment if it finds either that the default was willful or that the defendant failed to present a meritorious defense. *Scott*, 556 F. App'x at 293 (citing *Jenkens & Gilchrist*, 542 F.3d at 119–20); *see also Wright*, 113 F. App'x at 16 ("A finding of willful default ends the inquiry, for 'when the court finds an intentional failure of responsive pleadings there need be no further finding.'" (citing *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000)). "Other facts that may be considered include whether the public interest is implicated, whether there is significant financial loss to the defendant,

2

and whether the defendant acted expeditiously to correct the default." *Id.* (citing *Jenkens & Gilchrist*, 542 F.3d at 119). Ultimately, "the decision of whether to grant relief under Rule 60(b)(1) falls within [the district court's] sound discretion." *Wright*, 113 F. App'x at 16 (citing *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 997 (5th Cir. 2002)). The trial court has considerable, but not boundless, discretion in evaluating a Rule 60(b)(1) motion. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990).

"Gross carelessness is not enough. Ignorance of the rules is not enough, nor is ignorance of the law"; "a party has a duty of diligence to inquire about the status of a case." *Pryor*, 769 F.2d at 287 (citing 11 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2858 at 170). In conducting this analysis, "federal courts should not be agnostic with respect to the entry of default judgments, which are generally disfavored in the law." *Lacy*, 227 F.3d at 292. "Rule 60(b) [should be] applied most liberally to judgments of default, since trial on the merits is to be favored over such a truncated proceeding. Unless it appears that no injustice results from the default, relief should be granted." *In re OCA, Inc.*, 551 F.3d 359, 370–71 (5th Cir. 2008). "In light of the general disfavor of default judgments, 'where there are no intervening equities any doubt should, as a general proposition, be resolved in favor of the movant to the end of securing a trial upon the merits.'" *Id.* at 371 (quoting *Lacy*, 227 F.3d at 292).

B. **The Defendants' Motion to Vacate**

The defendants argue that the court should vacate the default judgment against them because of their mistake and excusable neglect. *See* Fed. R. Civ. P. 60(b)(1).[1] They contend that their default

---

[1] The defendants urge the court to vacate the default judgment against them on several other grounds, including failure to comply with Rule 55(a), this court's local rules, and fraud and misrepresentation under Rule 60(b)(3). These arguments lack merit. In any event, because the

3

was not willful, that they have meritorious defenses, and that reopening the case would not prejudice the plaintiffs.[2]

### 1. Willfulness

"[I]f a district court finds a defendant's default to be willful, then the district court need not make any other finding." *Jenkens & Gilchrist*, 542 F.3d at 120 (citing *Dierschke*, 975 F.2d at 184). "A *willful default* is an 'intentional failure' to respond to litigation." *In re OCA*, 551 F.3d at 370 n.32 (quoting *Lacy*, 227 F.3d at 292). "[P]erfection of service is not determinative—the defendant's knowledge of the perfected service, and the defendant's actions post-service also play a role in measuring the willfulness of a defendant's default." *Jenkens & Gilchrist*, 542 F.3d at 122-23.

The defendants admit they were served with substitute service in mid-February 2014 and failed to respond. They did not consult a lawyer, as they had "never before [been] involved in any lawsuit." (Docket Entry No. 18-1 at 2, ¶ 11). They "instead consulted with friends in [their] restaurant business" and "were told that [the] plaintiffs needed to prove up that they were employed by the employer." (Docket Entry No. 18-1 at 2, ¶ 11). Because they believed "that these two plaintiffs were never [their] employees and could not produce any proof, [the defendants] thought

---

defendants meet Rule 60(b)(1)'s more stringent standard for vacating a default judgment, the court need not consider their other contentions.

[2] The defendants cite *Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993), which articulated a slightly different four-factor standard for assessing "excusable neglect" in the context of the Federal Rules of Bankruptcy Procedure. *See id.* at 396; Fed. R. Bankr. P. 9006(b)(1). That case did not deal with Rule 60(b)(1). The Fifth Circuit has repeatedly stated that, when evaluating whether to set aside a default judgment under Rule 60(b)(1), courts must "examine the following factors: 'whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.'" *Jenkens & Gilchrist*, 542 F.3d at 119 (quoting *In re Dierschke*, 975 F.2d 181, 183 (5th Cir. 1992)); *see also In re OCA*, 551 F.3d at 370 (same).

the lawsuit would just go away on its own." (*Id.*). They state that the "lawsuit simply escaped [their] mind altogether" due to the "distraction of" closing down the restaurant around the time they were served. (*Id.* at 3, ¶ 12). They did not receive notice of either the initial conference date, which was reset multiple times, or of the plaintiffs' motion for default judgment. (*Id.* at 3, ¶ 13).

Although their approach was more than "somewhat naive," (*id.* at 2, ¶ 11), it was not a willful failure to respond as that term is used in this context.[3] *See Scott*, 556 F. App'x at 296 (reversing district court's finding of willfulness because although defendants' failure to respond "may have been negligent, it d[id] not amount to an 'intentional failure to respond to litigation.'" (quoting *In re OCA*, 551 F.3d at 370 n. 32)). In *In re OCA*, the court warned against adopting a "willfulness presumption" that would "render[] meaningless" "the instruction to apply Rule 60(b) 'most liberally' when considering whether to vacate a default judgment." 551 F.3d at 372. "[R]esolving doubts in [the defendants'] favor," the court "do[es] not believe the record conclusively shows that [their] default was willful." *Jenkens & Gilchrist*, 542 F.3d at 123.

### 2. Meritorious Defenses

"A district court has the discretion to refuse to set aside a default judgment under 60(b)(1) if the defendant 'fails to present a meritorious defense sufficient to support a finding on the merits for the defaulting party.'" *Jenkens & Gilchrist*, 542 F.3d at 120 (quoting *Lacy*, 227 F.3d at 293). "In determining whether a meritorious defense exists, '[t]he underlying concern is . . . whether there

---

[3] The plaintiffs argue that the defendants purposefully evaded service. But "[e]ven . . . accept[ing] [the plaintiffs'] claims of willful evasion of service (which [the defendants] dispute[]), intentionally evading service is 'insufficient to make a defendant's failure to answer willful,' because the duty to answer only arises after service has been perfected." *Jenkens & Gilchrist*, 542 F.3d at 123 n.6 (quoting *Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 374 (D.C. Cir. 1980)).

5

is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.'" *In re OCA*, 551 F.3d at 373 (quoting and altering *Jenkins & Gilchrist*, 542 F.3d at 22); *see also* 10A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL 3D § 2697 (1998) (same).

The FLSA protects employees under (1) "enterprise coverage," which covers those who are "employed in an enterprise engaged in commerce or in the production of goods for commerce," or (2) "individual coverage," which covers those who are individually "engaged in commerce or in the production of goods for commerce," regardless of whether the employer constitutes an enterprise. 29 U.S.C. §§ 206-07, 216(b). The plaintiffs bear the burden of "proving that the FLSA applies to [them]." *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (per curiam). The defendants argue that the FLSA does not apply because their business was not an "enterprise," the plaintiffs do not otherwise qualify for "individual coverage" under the Act, and the plaintiffs were never employed at their restaurant. These may be meritorious defenses.

With respect to "enterprise coverage," the Act defines an "enterprise engaged in commerce or in the production of goods for commerce" in part as "an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(ii). The plaintiffs alleged that the defendants "have had, and continued to have, annual gross business volume in excess of" this statutory standard. (Docket Entry No. 1 ¶ 30). But the defendants have rebutted these allegations with affidavits explaining that their business earned less than $500,000 in annual gross income each year. According to their sworn affidavits, the defendants' total gross receipts were $432,315 and $429,691 in 2012 and 2013. (Docket Entry No. 18-1, ¶ 4). The plaintiffs argue that the defendants should have submitted records to prove these sworn assertions, but the affidavits

are sufficient at this stage of the litigation. Their "motion and the evidence submitted to the district court provided definite factual allegations, as opposed to mere legal conclusions, in support of [this] defense." *Jenkens & Gilchrist*, 542 F.3d at 122.

Individual coverage applies only if "the [employee's] work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Sobrinio*, 474 F.3d at 829 (quoting *Mitchell v. H.B. Zachry Co.*, 362 U.S. 310, 324 (1960)). Although there is no "*de minimus* requirement," *id.*, the work itself must be "entwined with the continuous stream of interstate commerce." *Marshall v. Victoria Transp. Co.*, 603 F.2d 1122, 1125 (5th Cir. 1979). The complaint alleged that the plaintiffs "washed dishes with cleaning supplies which traveled in interstate commerce, chopped vegetables which traveled in interstate commerce, stock[ed] the buffet lines by handling serving equipment which traveled in interstate commerce, and used uniforms, towels, and aprons which traveled in interstate commerce." (Docket Entry No. 1, ¶ 28). In *Duran v. Wong*, No. 4:11-cv-3323, 2012 WL 5351220 (S.D. Tex. Oct. 23, 2012), a court granted summary judgment against the plaintiff-employee because he "allege[d] only that in the course of his duties as a dishwasher and kitchen helper at a local restaurant, he used products that had traveled in interstate commerce." *Id.* at *3; *see also Wirtz v. B.B. Saxon Co.*, 365 F.2d 457, 462 (5th Cir. 1966) (holding that individual FLSA coverage applies to employees maintaining instrumentalities of interstate travel at a military base but not to janitors cleaning buildings and structures at the same base); *Sobrinio*, 474 F.3d 828 (individual FLSA coverage does not apply to motel employee driving out-of-state guests to and from local destinations).

The plaintiffs argue (without supporting affidavits) that they "regularly answered . . . telephones to take customer food orders" and "regularly ran credit cards from customers via wire." (Docket Entry No. 19 at 11); *see also Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (observing that an employee may be "engaged in commerce" under the FLSA "by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel"). That may be true, but the defendants have plausibly raised the absence of coverage as a defense that may be meritorious.

The defendants also raise a meritorious defense with respect to employment. The defendants submitted an affidavit with their motion to vacate stating that the plaintiffs' names "were totally unfamiliar" to them, "nobody in the restaurant could remember their names," and they "could not find these two names at all" in the payroll records for the years in question. (Docket Entry No. 18-1 at 2). The plaintiffs have not submitted a response, but rest on their pleadings. The defendants' evidence, "if believed at trial, would lead to a result contrary to that achieved by the default." *Jenkens*, 542 F.3d at 122.

Although these defenses may not carry the day at trial, they are sufficient to support setting aside the default judgment. *See Jenkens & Gilchrist*, 542 F.3d at 122 (one's "'defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense.'" (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993)). The defendants' motion and submissions have shown "some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default," *In re OCA, Inc.*, 551 F.3d at 359 (quotation omitted). This factor weighs in favor of vacating the default judgment.

### 3. Prejudice

The Fifth Circuit has consistently held that a plaintiff has not suffered sufficient prejudice to warrant upholding a default judgment when setting it aside does "no harm to plaintiff except to require it to prove its case." *Lacy*, 227 F.3d at 293 (quoting *Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960)). To maintain a default judgment, the plaintiff must show that setting it aside will result in "loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Scott*, 556 F. App'x at 298 (quoting *Lacy*, 227 F.3d at 293).

The plaintiffs argue that all three forms of prejudice are present here. They assert that the defendants' employment records, which could rebut the defendants' claim that do not remember the plaintiffs, may no longer exist now that the defendants closed their business. The plaintiffs argue that the closure make discovery more difficult because "the putative class members and witnesses [will] no longer [be] available in one easily identifiable location." (Docket Entry No. 19 at 12). Finally, they contend that the possibility of fraud and collusion "will be greater" in light of this lack of evidence because "the [d]efendants are more likely to rely [o]n fraudulent self-serving affidavits like the ones they submit in support of their motion to vacate the default judgment." (*Id.*).

Although the six-month delay resulting from the failure to answer is important, it was relatively short and will not necessarily result in lost evidence or more difficult discovery. *See Lacy*, 227 F.3d at 293 (indicating that delay, or requiring a plaintiff to prove his case does not constitute prejudice). The defendants' business closed around February 2014, well before any proceedings could have occurred regardless of whether the court entered default. Forming a putative class will not be significantly harder now than it already would have been last spring. In any event, the defendants assert that they still have the relevant documents because "accounting documents

9

including pay records are still necessary for the compilation of the final year tax return and would not just disappear." (Docket Entry No. 20 at 4). Finally, the present record does not support the plaintiffs' conclusory allegations of fraud and collusion.

The plaintiffs have not demonstrated that they would be prejudiced by vacating the default judgment. This factor weighs favor of vacating the default judgment.

### 4. Other Factors

In entertaining a motion to vacate, "[c]ourts may also consider whether the public interest was implicated, whether there was significant financial loss to the defendant, and whether the defendant acted expeditiously to correct the default." *Jenkens & Gilchrist*, 542 F.3d at 119. Here, in light of their meritorious defenses, the defendants argue that "it would be patently unjust for [them] to be slapped with a judgment of as much as $131,376.20 which they cannot possibly afford." (Docket Entry No. 20 at 7). The judgment, which represents more than a fourth of the defendants' annual gross business revenue for the years in question, (Docket Entry No. 18-1 at 1, ¶ 4), could entail significant financial loss. Additionally, the defendants acted expeditiously to correct the default once they knew about it. Although the court issued the default judgment in early May 2014, the defendants first learned of the judgment on August 13, 2014, when "a Harris County constable served on [them] a writ of execution" at one of their other restaurants. (Docket Entry No. 18-1 at 3, ¶ 14). They moved to vacate the default judgment roughly two weeks later, on August 28, 2014. (Docket Entry No. 18). These factors weigh in favor of granting the defendants' motion to vacate.

## III. Conclusion

After weighing the factors, the court finds and concludes that the defendants have shown that their default resulted from excusable neglect. Fed. R. Civ. P. 60(b)(1). Their motion to vacate the default judgment, (Docket Entry No. 18), is granted.

SIGNED on November 26, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge